UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>IC BUSINESS MANAGEMENT, LLC,<br><br>Debtor. | Chapter 11<br><br>Case No.: 26-12203 (DSJ) |

**MEMORANDUM OF DECISION AND ORDER GRANTING MOTION TO DISMISS**

**APPEARANCES:**

LAW OFFICE OF JULIO E. PORTILLA, P.C.
*Counsel for the Debtor*
380 Lexington Avenue, Suite 446
New York, NY 10168
By: Julio E. Portilla, Esq.

MORRISON COHEN LLP
*Attorneys for Mary Djurasevic, as Trustee of the Revocable Trust of Stanley Walker*
909 Third Avenue, 27th Floor
New York, NY 10022
By: Joseph T. Moldovan, Esq.
Christopher Milito, Esq.

SICONOLFI PLLC
*Attorneys for Mary Djurasevic, as Trustee of the Revocable Trust of Stanley Walker*
2 Peter Cooper Road, Suite 4G
New York, NY 10010
By: Sally Roy Siconolfi, Esq.

U.S. DEPARTMENT OF JUSTICE
*Attorneys for Office of the U.S. Trustee*
One Bowling Green, Suite 534
New York, NY 10004
By: Daniel Rudewicz, Esq.

**DAVID S. JONES**
**UNITED STATES BANKRUPTCY JUDGE**

This recently filed Chapter 11 bankruptcy case was filed by a limited liability company with a single asset, namely, a residential rental building that contains approximately 20 units. The secured lender on the property has filed a motion to dismiss the case as a bad-faith bankruptcy filing or, in the alternative, for relief from the automatic stay. The movant has asserted and Debtor does not deny (and, in fact, possibly slightly obliquely on the record conceded) that: (i) Debtor collects no rent on the property; (ii) numerous units are inhabited by squatters; and (iii) Debtor's principal has been living rent-free in the building. In addition to the relief of dismissal and/or stay relief, the movant seeks, at a minimum, a conclusive determination that the debtor is a "single asset real estate" entity and thus subject to the statutory requirements for bankruptcies brought by such entities.

For the reasons stated below, the Court GRANTS the motion to dismiss the case as a bad-faith filing pursuant to § 1112(b) of the Bankruptcy Code, and GRANTS movant's request for *in rem* relief from the automatic stay pursuant to § 362(d)(4) of the Bankruptcy Code. Further, although the case's dismissal makes questionable the significance of the movant's "at a minimum" request, the Court finds and concludes that Debtor is a "single asset real estate" debtor as defined in the Bankruptcy Code.

**<u>Background</u>**

The Trustee of a revocable trust ("**Trustee**") that holds 99% of the Debtor's outstanding debt and a mortgage on the Debtor's sole asset/property, which is a residential apartment building, filed a motion to: (i) dismiss the petition as a bad faith filing with a 2-year bar on refilling/order providing a future petition effecting the property; or, alternatively (ii) for relief from the automatic stay ("**Motion**") [ECF No. 5]. The Motion also seeks, "at a minimum," a determination that Debtor is a single asset real estate debtor subject to the Bankruptcy Code's

requirements for such entities. Debtor acknowledges that it is a single asset real estate debtor and does not oppose such a finding.

The Trustee relied on the following indications of bad faith on the part of Debtor. First, this is Debtor's second bankruptcy filing within the past year. Previously, the Trustee was granted a judgment of foreclosure and sale on January 30, 2025, and scheduled a foreclosure sale for October 29, 2025. On the morning of that scheduled foreclosure sale, Debtor filed a *pro se* petition, staying the sale. That bankruptcy case was ultimately dismissed on June 28, 2026, on a motion by the United States Trustee, for Debtor's failure to satisfy a litany of the basic reporting requirements of a debtor-in-possession. The Trustee thereafter rescheduled the foreclosure sale for September 15, 2026. Once again, on the morning of that scheduled foreclosure sale, the Debtor filed the instant petition, again staying the sale.

Further, Debtor's principal has been living rent-free in the building, Debtor has allowed squatters to inhabit the building, the Debtor has no reported rental income, and the Debtor reportedly has not paid taxes or utilities or its mortgage lender (the Trustee) for years, with approximately $28,000 due and owing in charges for services (*see* Claim Nos. 1-1 and 3-1), as well as approximately $8,000,000 due under the Trustee's judgment of foreclosure and sale (*see* Trustee Response, hereafter defined, ¶ 19). Debtor has also not made post-petition payments to the Trustee.

Debtor filed an opposition to the Trustee's motion, contending that Debtor was pursuing a sale of the property that could be sufficient to cover mortgage and other obligations such as utilities, and that it was appropriate and permissible to use a bankruptcy process to pursue and formalize a sale that would be in the best interest of creditors and the estate. *See generally* ECF No. 15.

The Court conducted a hearing on the Motion on Tuesday, October 20, 2026. During the hearing, at which no testimony or other evidence from Debtor or its principal was offered, counsel for Debtor represented that Debtor's intention was to pursue an expeditious sale of the property, for which he said he had received expressions of interest including at least one offer backed by a statement of fund availability by a prospective purchaser. The Court stated its view that the Trustee had established the facts needed to support a finding that the filing was in bad faith and that cause existed either for dismissal or for relief from the stay, but for Debtor's counsel's representation that a sale was in the works and could likely be achieved quickly, thus generating funds and a superior outcome for creditors and the estate. Debtor's counsel also stated an intention to seek to retain an experienced real estate firm specializing in sales of distressed properties, with the idea of securing a stalking horse bidder that would make a firm offer subject to Debtor's ability to generate higher and better offers through an auction process. Debtor's counsel represented that he had exchanged three communications with the real estate firm and that he likely could get a retention application filed within a very few days.

Because no competent evidence of an impending sale had been presented, and informed by the strong showing of Debtor's bad faith and organizational disarray in the face of an imminent foreclosure sale, yet not wanting to cut off any possibility of a superior outcome, the Court allowed Debtor the opportunity to submit evidence no later than Friday, October 23 in order to substantiate its claim that a sale was imminent. The Court also stated that any additional information not yet in hand but supportive of Debtor's position could be submitted early the following week. The Court authorized the Trustee to file a response to any submission by Debtor on or before October 28, 2026.

On October 23, 2026, the Debtor filed a sworn declaration from its counsel (the "**Portilla Declaration**") [ECF No. 20], annexing three purported letters of intent ("**LOIs**") in connection with the sale of the property. Debtor did not submit any declaration from Debtor's principal or any other person with direct, personal knowledge or responsibility about Debtor's plans. The Portilla Declaration did not acknowledge or discuss plans to deal with or change the realities that Debtor's principal has been living in the building rent-free, and that the building is inhabited by squatters who do not pay rent. As of this writing on November 10, Debtor still has not made any further submission, nor has Debtor filed a motion to retain any broker despite the assurances of Debtor's counsel that a retention motion would be forthcoming by October 23 or early the following week.

A close reading of the Portilla Declaration reveals that it is hedged and non-concrete, and not a reflection of any definite proposal. For example, the declaration acknowledges that the declarant Mr. Portilla cannot, or did not, "authenticate" the veracity of certain annexed documents. *See, e.g.,* Portilla Declaration, ¶ 9. The declaration uses passive voice in a way that obfuscates who made what offer to whom. *See, e.g., Id.* at ¶ 2 (stating "[t]he annexed exhibits are true and correct copies of the documents received and reviewed by [Mr. Portilla]" without explanation of how these documents were conveyed to Mr. Portilla, or who conveyed the "offers"). Finally, the Portilla Declaration in no way spells out a complete and reliable explanation of how an achievable sale is within reach. While Mr. Portilla avers that "[t]he submission of these letters of intent…is made solely to substantiate the existence and terms of the written purchase proposals" (*id.* at ¶ 15), the Portilla Declaration is wholly silent on how any of these purported offers could (i) expeditiously close or (ii) satisfy the outstanding liens on the property given the accumulating interest on the secured debt. Put differently, the evidence

submitted by the Debtor, at best, demonstrates the existence of "letters contain[ing] terms requiring further diligence and negotiation" (*id.* at ¶ 14); it does not establish the existence of potential deals which are "persuasive and [] evidence a real intent…and an ability to go forward" with this case (Transcript of October 20, 2026 Hearing ("**Tr.**") [ECF No. 22], 38:3–6).

The Trustee timely responded to the Portilla Declaration ("**Trustee Response**") [ECF No. 21], arguing that the declaration's submission fails to establish the existence of viable sale agreements or prospects. For example, the Trustee Response observed that the bank statement supporting the first LOI appears to be fabricated (using a long reference number that is identical to one existing on a generic sample document that is available online), and that, at any rate, each asserted LOI has fatal defects such as stating conditions precedent to closing that cannot occur (such as a requirement that the building be delivered vacant) or failing to adequately resolve all outstanding liens on the property.

In the three weeks that have passed since the hearing, the Debtor has not made the Court aware of any further steps it has taken to make a sale more likely and realistic. There remains no broker retention application, and no bid procedures or other sale-related motion.

## Legal Standard

### A. Bad Faith Filing

Bankruptcy cases may be dismissed or converted for "cause" pursuant to § 1112(b)(1) of the Bankruptcy Code. Case law recognizes that one species of "cause" justifying dismissal is the bad-faith filing of a bankruptcy case. *In re JJ Arch LLC.*, 663 B.R. 258, 281 (Bankr. S.D.N.Y. 2024) (citation modified). To dismiss a petition as a bad-faith filing, the movant must establish both the objective futility of the debtor's reorganization (*i.e.*, there is no reasonable possibility

the debtor can confirm a plan) and the subjective bad faith of the debtor's filing (*i.e.*, there was no reasonable likelihood the debtor intended to reorganize). *Id.* at 281-82 (collecting cases).

"Once a movant establishes both prongs, a rebuttable presumption of bad faith arises and the burden shifts to the debtor to establish good and sufficient reasons why the relief should not be granted. To rebut that presumption, the debtor must demonstrate that unusual circumstances exist establishing that dismissal is not in the best interests of creditors and the estate." *In re SPAC Recovery Co.*, 676 B.R. 708, 718 (Bankr. S.D.N.Y. 2026) (citation modified).

**B. *In rem* Relief**

Section 362(a) of the Bankruptcy Code provides that the filing of a bankruptcy petition gives rise to the automatic stay of, roughly speaking, all pending and future lawsuits and collection activity against the debtor. Section 362(d) governs applications for relief from the stay, with subsection (d)(1) authorizing stay relief for "cause" which can include bad faith on the part of the debtor. *See generally In re Syndicom Corp.*, 268 B.R. 26, 47-50 (Bankr. S.D.N.Y. 2001) (citation modified). Relief from the stay can be expansive in appropriate circumstances. Specifically, pursuant to § 362(d)(4)(B), upon finding that a petition was filed as "part of a scheme to delay, hinder, or defraud creditors" and involved "multiple bankruptcy filings affecting [the same] real property," the Court may enter an order granting *in rem* relief from the stay for a period of two years, thus protecting creditors from successive filings by the same (or even other) debtors intended to derail legitimate creditor debt enforcement efforts. *See* 11 U.S.C. § 362(d)(4); *see also In re McKenzie*, 678 B.R. 20, 27-28 (Bankr. S.D.N.Y. 2026) (collecting cases). Courts need not make a finding of intent to defraud to grant *in rem* relief, so long as there is a finding that the filings were made with the intent to hinder or delay creditors. *See In re McKenzie*, 678 B.R. at 28 (citation modified).

The existence of repeated bankruptcy filings on the eve of successive foreclosures is independently sufficient to grant relief under § 362(d)(4)(B). *See Id.* at 28-29 (collecting cases); *see also In re Procel*, 467 B.R. 297, 308 (S.D.N.Y. 2012) (citation modified) ("[B]ankruptcy courts may infer an intent to hinder, delay, and defraud creditors from the fact of serial filings alone."). In such circumstances, no evidentiary hearing is required; rather, "[a] bankruptcy court can infer an intent to hinder, delay, and defraud creditors from the fact of the serial filings alone without holding an evidentiary hearing." *See In re McKenzie*, 678 B.R. at 28 (citation modified); *see also In re Procel*, 467 B.R. at 308 (same).

## Application

### A. Bad Faith Filing

The Court determined in an oral ruling during the October 20 hearing that the Trustee established objective futility/subjective bad faith, in essence because this is fundamentally a two-party dispute between Debtor and its secured lender with Debtor seemingly attempting to delay and gain litigation advantage as against the Trustee, and with no evident bankruptcy purpose or viable intention to pursue a successful bankruptcy outcome in this Court.

Accordingly, the burden shifted to the Debtor to establish good and sufficient reasons to keep this case in bankruptcy. If the Debtor could do so, those same reasons could be a reason to find a lack of objective futility of the case (*i.e.*, that there is no realistic possibility Debtor can confirm a plan), which might distinguish this case from cases in which courts have dismissed bad-faith filings and/or granted *in rem* relief from the stay based on a debtor's bad faith. Debtor, however, has failed to present such evidence, even when given a post-hearing opportunity to

substantiate its counsel's hedged yet optimistic assertions that it has real sale prospects that can form the cornerstone of a confirmable plan.

*First*, as noted above, the actual contents of the Portilla Declaration are hedged, limited, and insufficient to explain how, when, and why one could have confidence that the bankruptcy proceedings are likely to lead to a viable case resolution, whether involving a sale as anticipated, or otherwise. For example, the Portilla Declaration disavows "authenticating" any reported offer, and states that each "proposal" is subject to "further diligence and negotiation" (*see* Portilla Declaration, ¶ 14), a statement at odds with Debtor's representation that a sale is both imminent and likely. Moreover, the Portilla Declaration makes no representations regarding the status of those further "negotiations," nor does it make any representations that an agreement with any of these purported counterparties is imminent. That failure is particularly troubling in light of Debtor's failure to move to retain a broker to sell the property, a necessary step which Debtor's counsel previously represented would be forthcoming shortly, and which the Court instructed the Debtor to have on file the week after it submitted the Portilla Declaration. *See* Tr., 43:2-9.

Moreover, none of the LOI's annexed to the Portilla Declaration establish a sale is likely, much less imminent. The first LOI, purportedly signed by a Ms. Thomas, is accompanied by a bank statement which (on its face) appears fabricated and, regardless, the LOI is conditioned on "each unit's lawful occupancy." *See* Portilla Declaration, Ex. A; *Id.* at ¶ 6. The Debtor acknowledges the building is replete with squatters, making it impossible for the Thomas transaction to close. The two other LOIs are similarly deficient, as neither is a binding commitment to transact with Debtor. *See Id.*, Exs. C-D. They are at best preliminary indications of some interest, but that falls far short of presenting any reason to think a transaction will be

achieved. Ultimately, none of these LOI's indicate a sale is likely, meaning Debtor has not established "good and sufficient reasons" to continue prosecuting this case.

*Second*, even assuming, *arguendo*, the LOIs did represent credible offers (or even true sale prospects), they fail to establish the Debtor is likely to emerge successfully from bankruptcy. As the Trustee notes, between the accumulating interest on the Trustee's claim and the costs that would be associated with a sale, even if the Debtor were to sell the property as expeditiously as possible, the property would need to sell for approximately $9,140,000 to "break even." *See* Trustee Response, ¶¶ 19-20. Only one of the LOI's meets that threshold, and barely so; given the Debtor has yet to retain a broker, it is almost guaranteed the "break even" figure will ultimately be substantially in excess of that contemplated LOI such that even the highest hypothesized sale price has not been shown to represent an attainable and sufficient recovery to fund a plan or some other successful emergence from bankruptcy.

Simply put, then, Debtor's failure to provide concrete evidence of a tangible offer that satisfies the outstanding liens on the Property means that Debtor has failed to rebut the bad-faith filing presumption. *Compare In re Ridge View Farm, LLC*, No. 11-30463, 2012 WL 6137690, at *9 (Bankr. N.D.N.Y. Dec. 10, 2012) (holding debtor failed to rebut presumption because, *inter alia*, proposed sale was insufficient to cover secured debts on property) a*nd Squires Motel, LLC v. Gance*, 426 B.R. 29, 35 (N.D.N.Y. 2010) (affirming dismissal because, *inter alia*, debtor failed to show it could present a confirmable plan) *and In re Silverberg*, No. 8-25-73436-LAS, 2026 WL 994441, at *11 (Bankr. E.D.N.Y. Apr. 13, 2026) (holding debtor failed to rebut bad faith presumption because nothing was unusual about a two-party foreclosure dispute and debtor could not show reasonable probability of confirming plan) *with In re 68 W. 127 St., LLC*, 285 B.R. 838, 847 (Bankr. S.D.N.Y. 2002) (finding entity filed petition in good faith because, despite

owning a derelict non-income producing building, debtor stated intention to restructure the balance sheet with an injection of new capital, creating a reasonable probability of confirming a plan).

*Third*, the Debtor's failure to rebut the bad faith presumption is further evidenced by contrasting what other courts have deemed "good and sufficient reasons" for keeping a case in bankruptcy. *See In re JPA No. 111 Co., Ltd.*, No. 21-12075 (DSJ), 2022 WL 298428, at *11 (Bankr. S.D.N.Y. Feb. 1, 2022) (declining to dismiss case where debtor "expeditiously" moved to approve stalking horse bidder, with support of two secured creditors); *see also In re AAGS Holdings LLC*, 608 B.R. 373, 384 (Bankr. S.D.N.Y. 2019) (declining to dismiss case as bad faith filing because debtor immediately filed a plan premised on securing exit financing, which the debtor claimed to have secured).

*In re JPA*, for example, declined to dismiss the case as a bad faith filing because, notwithstanding the presence of many of the traditional bad-faith factors, the debtor had already moved to approve a prospective purchaser as a stalking-horse bidder, with the support of two secured creditors. *In re JPA No. 111 Co., Ltd.*, No. 21-12075 (DSJ), 2022 WL 298428, at *11. The court reasoned that was sufficient to rebut the bad-faith presumption because the debtor was moving "expeditiously" to consummate a tangible sale that would fund its forthcoming plan. *Id.*

Here, the same cannot be said of Debtor. Despite assurances back on October 20 of an imminently forthcoming broker application, no such application has been filed. Nor has Debtor demonstrated that it has taken any concrete steps or achieved any progress to lock in any of the proffered non-committal LOIs. The Court thus cannot conclude that there are good and sufficient reasons for permitting the Debtor to continue prosecuting this case.

**B. *In Rem* Relief**

The Trustee has established its entitlement to *in rem* relief.

There is no dispute Debtor has filed successive petitions on the eve of foreclosure. *See* Motion, pp. 5-6. As noted above, that is independently sufficient to grant the Trustee *in rem* relief (without holding an evidentiary hearing). *See In re McKenzie*, 678 B.R. at 28-29 (citation modified); *see also In re Procel*, 467 B.R. at 308. To the extent necessary, the Court grants the alternative motion for relief from the stay so as to provide for *in rem* relief.

The only question is whether it can be proper to grant *in rem* relief in tandem with a dismissal, which is the primary relief being granted here, as opposed to connecting such relief to an order granting a motion solely for relief from the automatic stay. Such relief is permissible and it is warranted here. Courts have often granted a creditor *in rem* relief in tandem with dismissing the petition as a bad faith filing. *See In re Valid Value Props., LLC*, No. 16-13299, 2017 WL 123751, at *9 (Bankr. S.D.N.Y. Jan. 5, 2017) (dismissing case for cause while simultaneously granting *in rem* relief under § 362(d)(4)(B)); *In re GEL, LLC*, 495 B.R. 240, 249 (Bankr. E.D.N.Y. 2012) (same); *In re Montalvo*, 416 B.R. 381, 389 (Bankr. E.D.N.Y. 2009) (same); *In re Kearns*, 616 B.R. 458, 471 (Bankr. W.D.N.Y. 2020) (same); *cf. In re Hartford & York LLC*, No. 13-45563-ESS, 2014 WL 985449, at *8 (Bankr. E.D.N.Y. Mar. 13, 2014) (dismissing case and nullifying stay for any filing within the next 120 days unless, after notice and a hearing, the debtor establishes cause to reinstate the stay). The logic of granting such relief is intuitive. The Trustee here, like many secured creditors, needs to be protected against being once again frustrated on the eve of foreclosure by yet another bad-faith filing. One method of handling that is to impose a filing bar. But a refiling bar is a significant and possibly broader than necessary sanction to adequately protect the secured creditor's interests; in other words, in some

cases, a filing bar may not be closely tailored to the harm or prejudice that the court seeks to prevent. *In rem* relief can be a better fit for the practical harms a court seeks to prevent even where a case is being dismissed. Such relief, compared to an outright refiling bar, is less punitive to the debtor because it leaves the door open for the debtor to file a new case and to seek to establish cause for reinstituting the stay based on changed circumstances if they have readied a realistic way forward, while still avoiding bad-faith or unwarranted future efforts to prevent a creditor from pursuing its legitimate enforcement rights.

That approach makes abundant sense here. If Debtor's sale prospects are, in fact, genuine, it can continue pursuing a prospective sale and file a new bankruptcy case if and when it is armed with evidence of real and actionable sale prospects. Upon the filing of any such new case, Debtor would be able to move to reinstitute the stay for cause, almost certainly before the Trustee could complete its contemplated foreclosure sale (which the Trustee has represented cannot occur for, the earliest, another 120 days, *see* Tr., 32:18-20). Imposing *in rem* relief now prevents future bad-faith filings from derailing the Trustee's legitimate enforcement efforts and imposing lengthy, unwarranted further delays, and it avoids imposing unnecessary impediments to Debtor's ability to navigate its difficult situation if Debtor indeed is prepared to pursue some superior path forward.

For these reasons, the motion to dismiss is granted pursuant to §§ 1112(b) and 362(d)(4)(B). The case is dismissed as a bad faith filing, and the Trustee is granted *in rem* relief from the stay for any remaining pendency of this case, and in any future case filed within two years of the date of entry of this opinion that purports to affect the property encumbered by the Trustee's mortgage.

**CONCLUSION**

For the reasons stated above, the Motion is granted, Debtor's case is dismissed, and *in rem* relief is granted as stated above. Further, as noted, the Court finds and concludes that Debtor is a single asset real estate debtor. Movant shall submit a proposed order on notice to effectuate this decision.

SO ORDERED.

Dated: New York, New York
November 10, 2026

*s/ David S. Jones*
Honorable David S. Jones
United States Bankruptcy Judge